\* NOT FOR PUBLICATION \*

## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX
## APPELLATE DIVISION

| | |
|---|---|
| KWANZAA MARTINEZ, | ) D.C. CRIM. APP. NO. 2004/148 |
| | ) |
| Appellant, | ) Re: Sup.Ct.Crim. 228/2003 |
| | ) |
| v. | ) |
| | ) |
| GOVERNMENT OF THE VIRGIN ISLANDS, | ) |
| | ) |
| Appellee. | ) |
| | ) |

On Appeal from the Superior Court of the Virgin Islands

Considered: June 15, 2007
Filed: February 26, 2008

BEFORE:   **CURTIS V. GÓMEZ**, Chief Judge, District Court of the
Virgin Islands; **RAYMOND L. FINCH**, Judge of the District
Court of the Virgin Islands; and **AUDREY L. THOMAS**,
Judge of the Superior Court of the Virgin Islands,
sitting by Designation.

ATTORNEYS:

**Stephen Brusch, Esq.**
St. Croix, U.S.V.I.
        Attorney for Appellant.

**Maureen Phelan, AAG**
St. Thomas, U.S.V.I.
        Attorney for Appellee.

## MEMORANDUM OPINION

Per Curiam.

*Kwanzaa Martinez v. Government of the Virgin Islands*
D.C. Crim. APP. NO. 2004/0148
Memorandum Opinion
Page 2

## I. Issues Presented

1) Whether the evidence at trial was sufficient to sustain Appellant's conviction of Kidnapping for Rape.

2) Whether the trial court committed reversible error in its reading of the jury instructions.

3) Whether the prosecutor violated Appellant's Fifth Amendment right to Due Process by questioning Appellant regarding his post-arrest silence.

4) Whether the trial court erroneously admitted hearsay testimony.

## II. Facts and Procedural Posture

On June 16, 2003, 16 year-old Chenae Harvey ("Harvey") was at home in Harbor View housing community on the island of St. Croix in the U.S. Virgin Islands. (J.A. pp. 152-153.) Sometime during the early evening, Harvey left home and walked to the parking lot near her apartment. There, her brother Maurice, and her cousin, Appellant Kwanzaa Martinez,("Appellant" or "Martinez") were holding a conversation. (J.A. p. 153.) Harvey testified that later on that evening, she got into Martinez' car with the expectation that Martinez would drive her to her friend Amanda's apartment. (J.A. p. 155.) However, Martinez drove off with Harvey in the vehicle and sped past Amanda's house.(J.A. p. 156.) Harvey testified that Martinez' conduct was unexpected, and after it was clear to her that he did not intend to take her immediately home, she asked to be returned home. (J.A. p. 157.)

*Kwanzaa Martinez v. Government of the Virgin Islands*
D.C. Crim. APP. NO. 2004/0148
Memorandum Opinion
Page 3

Martinez was unresponsive to her pleas and as a result, Harvey reached for the steering wheel in an attempt to make Martinez stop. (J.A. p. 157.)

Harvey further testified that Martinez told her to stop grabbing the steering wheel because he had a gun in the car and did not want the police to stop him. (J.A. p. 157.) Martinez continued to drive for several minutes navigating the sharp corners and winding roads that twist along the northern shore of St. Croix, at high rates of speed. (J.A. p. 158.) Harvey testified that she feared for her life during this drive. (J.A. p. 158.) Eventually, Martinez drove past Salt River, to an isolated location near a steep hill nicknamed "the beast" and stopped the vehicle at a dead end road. (J.A. p. 158.) This location was approximately ten miles from Harvey's intended destination. (J.A. p. 158.) Harvey further testified that once the vehicle stopped, Martinez asked her for sex; a request she pointedly declined. (J.A. p. 158.) Martinez then told  Harvey to get out of the car, which she did. (J.A. p. 158-159.) Martinez then left the area. (J.A. p. 159.) At that point, Harvey was alone in the isolated area near Salt River at approximately 9:00 p.m. (J.A. p. 159.) Harvey begged and screamed for help. (J.A. p. 159.) Martinez returned approximately five minutes later. (J.A. p. 159.) Harvey testified that when Martinez returned, she opened the rear door

*Kwanzaa Martinez v. Government of the Virgin Islands*
D.C. Crim. APP. NO. 2004/0148
Memorandum Opinion
Page 4

of the vehicle and got into the back seat, Martinez then dragged her out of the vehicle by her right hand at which time a struggle ensued. (J.A. p. 159.) According to Harvey, Martinez ordered her to take off her underwear, which she did, and forced her to engage in various acts of vaginal and oral sexual intercourse on the trunk and in the back seat of the vehicle. (J.A. pp. 160-162.) Harvey testified that Martinez told her that he would shoot her if she told anyone they had sex. (J.A. pp. 162, 164-165.) Martinez then drove Harvey home in silence. (J.A. p. 165.)

Two days after the incident, Harvey told her brother, sister and mother about the attack. (J.A. pp. 168-170.) Her mother then took her to the hospital. (J.A. pp. 167-169, 174.) A criminal investigation ensued. Martinez' DNA was found on Harvey's panties and on the back seat of the car. (J.A. p. 89.) Investigators also recovered Harvey and Martinez' DNA from the back seat of the car that Martinez was driving. (J.A. pp. 91, 93.) Subsequently, Martinez was charged in a six(6) count Information for the crimes of Aggravated Rape in the First Degree; Aggravated Rape in the Second Degree; Kidnaping for Rape; Possession of a Deadly or Dangerous Weapon During the Commission of a Crime of Violence; and two counts of Unlawful Sexual Contact in the First Degree. On April 28, 2004 the parties selected a jury and proceeded to trial. At trial, Martinez took the stand and testified that

*Kwanzaa Martinez v. Government of the Virgin Islands*
D.C. Crim. APP. NO. 2004/0148
Memorandum Opinion
Page 5

Harvey attempted to solicit money from him. (J.A. pp. 346-347.)

Martinez also testified that Harvey told him that she would make

a false accusation of rape if she did not get the money she

requested. (J.A. pp. 349-350.)

At the close of evidence, the court instructed the jury as

to the elements of Kidnaping for Rape. (J.A. p. 506.) However,

the court omitted the element of force or threat in that offense.

After the initial instruction, the jury was re-instructed with a

curative instruction which included the element of force or

threat in the court's revised instruction. (J.A. pp. 521-522.)

After a three day trial, the jury acquitted Martinez of:

Aggravated Rape in the First Degree; Possession of a Deadly

Weapon During the Commission of a Crime of Violence; and the two

counts of Unlawful Sexual Contact of the First Degree.[1]

The jury returned a guilty verdict on Count III, Kidnaping

for Rape in violation of 14 V.I.C. §1052(b). On July 23, 2004 the

trial court denied Martinez' Motion for Judgment of Acquittal,

for a New Trial and for an Arrest of Judgment. (J.A. p. 25.) On

August 20, 2004, the trial court sentenced the Appellant to a

term of thirty (30) years incarceration with credit for time

served. Subsequently, Martinez filed this timely appeal.

---

[1] The court previously dismissed Count II, the charge of Rape in the
Second Degree.

*Kwanzaa Martinez v. Government of the Virgin Islands*
D.C. Crim. APP. NO. 2004/0148
Memorandum Opinion
Page 6

## III.  DISCUSSION

### A.    Jurisdiction and Standards of Review

We exercise jurisdiction[2] to review the final judgment in
this criminal matter. This Court may review the judgments and
orders of the Superior Court in criminal cases. *See* V.I. Code
Ann. tit. 4 § 33 (1997 & Supp. 2001).  We review *de novo*
questions of law, issues implicating rights protected under the
U.S. Constitution, and the interpretation of statute. However, we
afford the more deferential clear error review to factual
determinations. *See Government of V.I. v. Albert,* 89 F.Supp.2d
658, 663 (D.V.I. App. Div. 2001).

### B.    Whether the evidence at trial was sufficient to sustain Appellant's conviction of Kidnapping for Rape.

"Whoever abducts, takes or carries away any person by force
or threat with the intent to commit rape." V.I. Code Ann. tit. 14
§ 1052(b). The standard of review to determine whether the
evidence was sufficient to sustain Appellant's conviction is a
question of law over which we exercise plenary review. *Sanchez v.
Government of the Virgin Islands*, 921 F. Supp. 297, 299, 34 V.I.
105 (D.V.I. APP. 1996); *Smalls v. Government of the Virgin*

---

[2]    *See also* Revised Organic Act § 23A, 48 U.S.C. § 1613a. The complete
Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541- 1645 (1994),
*reprinted in* V.I.CODE ANN., Historical Documents, Organic Acts, and U.S.
Constitution at 159-60 (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1)
["Revised Organic Act"].

*Kwanzaa Martinez v. Government of the Virgin Islands*
D.C. Crim. APP. NO. 2004/0148
Memorandum Opinion
Page 7

*Islands*, 1994 U.S. Dist. LEXIS 6286, 31 V.I. 121 (D.V.I. APP. 1994).

The Appellant who challenges the sufficiency of the evidence bears a heavy burden. *United States. V. Navarro*, 145 F.3d 580, 692 (3d Cir. 1998). He must prove that, even when the evidence, both direct and circumstantial, is viewed in the light most favorable to the verdict, even when the Government is given the benefit of all inferences drawn from it; that no rational trier of fact could have found the essential elements of the crime were proven beyond a reasonable doubt. *United States v. Palmas-Ruedas*, 121 F.3d 841, 855 (3d Cir. 1997).

In support of his argument, Appellant relies upon *Government of the Virgin Islands v. Berry*, 604 F.2d 221 (3d Cir. 1979). In *Berry*, the appellants forced their robbery victim to take a swim at Rainbow Beach before abandoning him at the beach. *Id*. The Third Circuit Court of Appeals, in applying 14 V.I.C. § 1052 to appellants' argument, found that there was insufficient evidence that they engaged in conduct which the Virgin Islands Aggravated Kidnapping statute prohibited. *Id*. However, since the court's decision in *Berry*, the Virgin Islands legislature enacted

14 V.I.C. § 1052(b) (Kidnapping for Rape), which proscribes abduction with the intent to commit rape and defines such

*Kwanzaa Martinez v. Government of the Virgin Islands*
D.C. Crim. APP. NO. 2004/0148
Memorandum Opinion
Page 8

abduction as kidnapping.[3]  Martinez was convicted of the latter

crime; Kidnapping for Rape, in violation of 14 V.I.C. § 1052(b).

The Third Circuit Court of Appeals first interpreted the

Virgin Islands Kidnapping for Rape statute in *Government of the*

*Virgin Islands v. Ventura*, 775 F.2d 92 (3d Cir. 1985). In

*Ventura*, the Court held that in determining whether a Kidnapping

for Rape occurred, two factors must be considered 1) any

significant danger to the victim independent of rape; and 2)the

duration of the asportation. *Ventura*, 775 F.2d at 97.

Appellant argues that Harvey initially entered the vehicle

voluntarily and as such, the elements of Kidnapping for Rape were

not proven beyond a reasonable doubt because no kidnapping or

asportation took place. (App. Brief p. 10.) Appellant further

argues that when he returned, after temporarily abandoning

Harvey on an isolated road in the dark, that she again

voluntarily re-entered the vehicle. Hence, Appellant argues

because no abduction or asportation took place, there was

insufficient evidence to support the jury's finding that Harvey

---

[3] In 1983, the Virgin Islands Legislature amended V.I. Code § 1052,
denoting the existing provision as § 1052(a) and adding a new subsection (b),
which provides: Whoever abducts, takes or carries away any person by force or
threat with the intent to commit rape is guilty of kidnapping and shall be
imprisoned for not less than 15 years and shall not be eligible for parole
until he has served at least one-half of sentence imposed.

*Kwanzaa Martinez v. Government of the Virgin Islands*
D.C. Crim. APP. NO. 2004/0148
Memorandum Opinion
Page 9

was "carried away by threat or force". *See* 14 V.I.C. § 1052(b);
(App. Brief p. 11.) We disagree.

Even if Harvey initially entered the vehicle voluntarily, a
rational juror could find that her consent was withdrawn in one
of several circumstances testified to at trial: first, when
Martinez drove past Harvey's intended destination; second, when
she began begging and pleading for Martinez to stop.[4]
Additionally, a rational juror could find that Harvey was
carried away by threat or force when Martinez told her to stop
grabbing the steering wheel because he had a gun in the car.

Appellant also makes the conclusory argument that the
duration of asportation was minimal in scope and a rational juror
could not find that it exposed Harvey to any significant danger.
(Appellant's Brief p. 12.) We disagree. A rational juror could
conclude that the evidence of Harvey's drive from Harbor View,
to a destination past Salt River, satisfied *Ventura's* duration of
asportation consideration. *See Ventura,*775 F.2d at 98(holding
that Appellant who dragged his victim eighty-eight feet satisfied
the duration of asportation consideration.) Moreover, Harvey

---

[4] In a kidnapping context, even if a victim initially goes voluntarily
with a defendant, if at any point her consent is withdrawn, defendant's use of
force or fear to continue the asportation over a substantial distance
constitutes kidnapping. *People v. Camden*, 548 P.2d 1110, 1113 (1976); *People
v. Brown*, 622 P.2d 109 (Col.App. 1980).

*Kwanzaa Martinez v. Government of the Virgin Islands*
D.C. Crim. APP. NO. 2004/0148
Memorandum Opinion
Page 10

testified that she was driven miles away from her home, at high

rates of speed, with a man who threatened to have a gun. Given

this evidence, a rational juror could also find beyond a

reasonable doubt that Appellant posed a significant danger to

Harvey independent of whether a rape occurred. Accordingly, we

conclude that the evidence at trial was sufficient to support a

conviction of Kidnapping for Rape, in violation of 14 V.I.C. §

1052(b).

   **C.   Whether the trial court committed reversible error in
         its reading of the jury instructions.**

Appellant argues that the trial court committed reversible

error in failing to properly instruct the jury on the statutory

elements of Kidnapping for Rape. Appellant failed to object to

the jury instructions at trial. Where appellant makes no

objection at trial to the court's jury instructions, they are

reviewed only for plain error; reversal is sparingly used only to

correct what otherwise would result in manifest injustice. *Rabess

v. Government*, 30 V.I. 348 (1994); *Government of the Virgin

Islands v. Smith*, 949 F.2d 677, 681(3d Cir. 1991). Plain errors

are defects affecting substantial rights. Fed. R. Crim P. 52. An

error affects a substantial right if the error was prejudicial to

the defendant and affected the outcome of trial. *United States v.

Olano*, 507 U.S. 725, 736 (1993).

*Kwanzaa Martinez v. Government of the Virgin Islands*
D.C. Crim. APP. NO. 2004/0148
Memorandum Opinion
Page 11

In this case, Appellant argues that the jury instructions were incorrect. Incorrect jury instructions may be corrected with a curative instruction. *Cupp v. Naughten*, 414 U.S. 141,146-147(1973)(finding no due process violation where improper jury instruction was accompanied by curative instruction). *Id.* at 147. As the Third Circuit Court of Appeals' holding in *Olgin* states, "[a]ny harm caused by the trial judge's comments or questioning of witnesses was remedied by the curative instruction given to the jury." *United States v. Olgin*, 745 F.2d 263, 269 (3d Cir. 1984). In order to effect a cure, the supplementary instruction must address the error in the original instruction and provide the proper instruction in its stead. *Id.* at 269. In this case, the record reveals a direct cure.

Title 14 V.I.C. § 1052(b) reads:

> Whoever abducts, takes or carries away any person by force or threat with the intent to commit rape is guilty of kidnapping and shall be imprisoned for not less than 15 years and shall not be eligible for parole until he has served at least on-half of sentence imposed.

The jury was initially instructed at trial in the following manner:

> [B]efore you may find the defendant guilty of kidnaping for rape as charged in count 3, you must find that the government has proven each of the following essential elements beyond a reasonable doubt: That the defendant and no other person, did knowingly and intentionally and unlawfully abduct take or carry away Chenae Harvey; that

*Kwanzaa Martinez v. Government of the Virgin Islands*
D.C. Crim. APP. NO. 2004/0148
Memorandum Opinion
Page 12

> the defendant acted with specific intent when he
> unlawfully abduct[ed], took, or carried away Chenae
> Harvey with the specific intent to commit rape; that
> these acts occurred on or about Jun 16, 2003 in St.
> Croix, United States Virgin Islands. (J.A. p. 506.)

Initially, the court's reading of the jury instruction

failed to track the statute because it did not contain the

element "by threat or force." However, the court cured this error

and the jury was re-instructed in the following manner prior to

retiring for deliberation:

> Ladies and gentleman of the jury, in describing to
> you the elements of the kidnapping for rape, Count 3,
> I did indicate to you that under the laws of the
> Virgin Islands it is an offense to abduct, take or
> carry away any person by force or threat with the
> specific intent to commit rape. What I failed to do
> in listing the elements is to include force or
> threat, so that I will repeat. (J.A. pp. 521-522.)

> Before you may find the defendant guilty of
> kidnapping for rape as charges in Count 3, you must
> also find that the government has proven each of the
> following essential elements beyond a reasonable
> doubt: That the defendant knowingly and intentionally
> and unlawfully did abduct, take or carry away Chenae
> Harvey; that the defendant used force or threat
> against Chenae Harvey; that the defendant acted with
> specific intent to commit rape; and that all this
> conduct took place on June 16, 2003 in St. Croix,
> U.S. Virgin Islands. (J.A. pp. 521-522.)

The court's revised instructions directly cured any initial

error that may have taken place. Accordingly, this court cannot

conclude that a plain error occurred at trial.

*Kwanzaa Martinez v. Government of the Virgin Islands*
D.C. Crim. APP. NO. 2004/0148
Memorandum Opinion
Page 13

> **D.    Whether the prosecutor violated Appellant's Fifth Amendment right to Due Process by questioning Appellant regarding his post-arrest silence.**
>
> **1. Doyle Violation**

Generally, a prosecutor may not cross examine a criminal defendant about his post-arrest silence "because its prejudicial effect substantially outweighs its probative value." *See Doyle v. Ohio*, 426 U.S. 610(1976)(citations omitted); *United States v. Johnson*, 302 F.3d 139, 146 (3d Cir. 2002). Thus, the United States Supreme Court has held that a prosecutor's questions or remarks about a defendant's post-arrest silence may, under some circumstances, violate the defendant's Due Process protections.

*Doyle*, 426 U.S. at 618-619.[5] However, "...the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest." *Id. at 619*. The court should address five factors when addressing alleged *Doyle* violations: 1)how the prosecution used the defendant's silence; 2)whether the defendant or the prosecution initiated reference to the post-arrest silence; 3)the intensity

---

[5] The prohibition against using a Defendant's post-arrest silence is intended to curtail government over-reaching. "[I]t is impermissible to penalize an individual for exercising his Fifth Amendment Privilege when he is under police custodial interrogation. The prosecution, may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation. *Miranda* v. Arizona, 384 U.S. 436, 468 (1966).

*Kwanzaa Martinez v. Government of the Virgin Islands*
D.C. Crim. APP. NO. 2004/0148
Memorandum Opinion
Page 14

and frequency of the reference; 4)the quantum of other evidence

of guilt; and 5) whether the trial court issued a curative

instruction. (*See, e.g.*, *Greer v. Miller*, 483 U.S. 756 (1987));

*United States v. Johnson* 302 F.3d 139, 148 (3d Cir. 2002).

In this matter, Martinez took the stand in his own defense.

On direct and cross examination, Martinez testified that on the

day in question, Harvey demanded money from him and threatened to

accuse him of sexual misconduct if she did not get money. (J.A.

pp. 346 , 350, 358.) On cross-examination, the following exchange

took place:

| | |
|---|---|
| [Prosecutor]: | Did you tell Ms. Martinez that Chenae might be in some trouble and needed 5 or $600? |
| [Martinez]: | No, sir. |
| [Prosecutor]: | Did you tell your mother that Chenae demanded 5 or $600 from you? |
| [Defense Counsel]: | Objection, your honor |
| [Court]: | Overruled |
| [Prosecutor] | Did you tell your mother that Chenae was trying to shake you down for 5 or $600? |
| [Defense Counsel]: | Objection as to shake down. |
| [Court]: | Sustain |
| [Prosecutor]: | Did you tell anyone other than today Chenae demanded 5 or $600 form [sic] you? |
| [Defense Counsel]: | Objection, your honor |
| [Court]: | Overruled.(J.A. pp. 359, 360.) |

During cross-examination the prosecutor initiated

questioning that sought to elicit testimony regarding Martinez'

silence. Defense counsel requested a sidebar, at which time counsel argued that the prosecutor's questioning impinged upon Martinez' privilege against self-incrimination. (J.A. p. 361.) The trial court overruled counsel's objection because it believed the object of the Government's questioning was to indicate that Appellant recently made up the story. (J.A. p. 361.)

As an initial matter, we are particularly concerned with the prosecutor's question: "Did you tell *anyone* other than today Chenae Demanded 5 or $600 form [sic] you?" (J.A. p. 360.) Here, this cross-examination question regarding Martinez' post-arrest silence was overly broad and its breadth and obscurity affect the applicable review in this matter. This question did not limit or specify a time frame during which Martinez may have spoken to anyone regarding the money Harvey allegedly requested from him. Moreover, it is also unclear whether this question was regarding Martinez' silence to law enforcement, or to anyone in general including family members, friends, etc. As such, this Court must presume that the prosecutor meant what he asked: whether Martinez spoke with anyone, including law enforcement at anytime, including pre-arrest pre-Miranda, up to trial. Considering the sanctity of Appellant's Constitutional privilege at stake, we shall construe the question posed to Martinez to address his post-Miranda, post-arrest silence to law enforcement.

*Kwanzaa Martinez v. Government of the Virgin Islands*
D.C. Crim. APP. NO. 2004/0148
Memorandum Opinion
Page 16

In this case, the prosecutor argues that its questioning was intended to impeach Martinez' testimony on direct examination. We are unconvinced. On direct examination, Martinez did not claim to have told the police or anyone else an exculpatory story after arrest. Martinez did not imply that he had participated actively in the investigation, and never suggested that he had surrendered his right to silence by speaking directly with the authorities. Therefore, the prosecutor's question implicated Martinez' right to remain silent more than it constituted probative questioning of his truth or credibility. *See Hassine v. Zimmerman*, 160 F.3d 941, 949(3d Cir. 1998).

The prosecutor's line of questioning was similar to other questions that have been found to violate a defendant's Due Process protections under *Doyle*. *See, e.g., Woods v. Gov't of the Virgin Islands*, 2006 U.S. Dist. LEXIS 59367 (D.V.I. 2006) (holding that a prosecutor unconstitutionally commented upon a criminal defendant's post-arrest silence when he asked the defendant in cross examination whether he told *anyone about* his self-defense theory). This type of questioning is impermissible under *Doyle*. *See Doyle*, 426 U.S. at 619; *Hassine*, 160 F.3d at 949; *United States v. Gant*, 17 F.3d 935, 941 (7th Cir. 1994). Accordingly, Martinez' direct testimony did not justify the

*Kwanzaa Martinez v. Government of the Virgin Islands*
D.C. Crim. APP. NO. 2004/0148
Memorandum Opinion
Page 17

Government's pointed cross examination that referenced Martinez'

silence.

## 2. Harmless Beyond a Reasonable Doubt

Having found a violation of Martinez' constitutional rights,

under *Doyle*, we turn next to the issue of whether the error can

be characterized as harmless. A *Doyle* violation warrants reversal

only if it was not harmless beyond a reasonable doubt. *Davis v.*

*Virgin Islands*, 2007 U.S. Dist. LEXIS 37187 (D.V.I. 2007)(quoting

*Chapman v. California*, 386 U.S. 18, 23 (1967)). The Supreme Court

has written that "*Doyle* error fits squarely into the category of

constitutional violations which we have characterized as trial

error." *Brecht v. Abrahamson*, 507 U.S. 619, 629(1993)(quoting

*Arizona v. Fulminante*, 499 U.S. 279, 307(1991)). Such

constitutional errors are subject to harmless error analysis

under the "harmless-beyond-a-reasonable-doubt standard." *Brecht*,

507 U.S. at 630(citing *Chapman v. California*, 386 U.S. 18(1967)).

Moreover, *Doyle* violations have previously been recognized as

harmless beyond a reasonable doubt where the evidence against the

defendant is "overwhelming." *United States v. Dunbar*, 767 F.2d

72,76(3d Cir. 1985).

In the case *sub judice*, there is no dispute that Martinez

took Harvey away from her home and drove her to an isolated

*Kwanzaa Martinez v. Government of the Virgin Islands*
D.C. Crim. APP. NO. 2004/0148
Memorandum Opinion
Page 18

destination. In the instant trial, there was an eye-witness
identification and an account of the crime by the victim who
testified that Martinez drove her away from home against her will
and that he said he had a gun in the car. The jury also heard
testimony that Martinez drove at a dangerously high rate of speed
before he: forced Harvey to leave the vehicle in the dark of the
night; had sex with her and after having sex; threatened to kill
Harvey if she told anyone. Finally, Harvey's and Martinez' DNA
were both found on  Harvey's panties and in the vehicle  Martinez
was driving on the night in question.

In applying the *Chapman* harmless beyond a reasonable doubt
standard, the evidence of Martinez' guilt presented at trial was
overwhelming. Based on the evidence adduced at trial, even
without the prosecutor's inappropriate question, the jury could
have determined that Martinez did take  Harvey away by threat or
force with the intent to rape her. *See, e.g., Woods v. Gov't of
the Virgin Islands,* 2006 U.S. Dist. LEXIS 59367 (D.V.I. 2006);
*Balter,* 91 F.3d at 440; *see also, United States v. Rodriguez,* 43
F.3d 117, 123 (5th Cir. 1995) (holding that a prosecutor's
questions to the defendant about his post-arrest silence, which
did not refer to a specific time period, were harmless error).
Thus, while this Court does not approve of the prosecutor's

*Kwanzaa Martinez v. Government of the Virgin Islands*
D.C. Crim. APP. NO. 2004/0148
Memorandum Opinion
Page 19

question about Martinez' post-arrest silence, the *Doyle* violation

in this case rises only to the level of harmless error.

**E.   Whether the trial court erroneously admitted hearsay testimony.**

Appellant argues that the trial court impermissibly allowed

hearsay testimony into evidence. Specifically, Appellant argues

that  Harvey's testimony that she told her brother, mother and a

friend about the incident and was taken to the hospital as a

result was hearsay in the form of an oblique narrative. (J.A. pp.

167-169).[6]

Admission of evidence and testimony is discretionary and is

reviewed for abuse of discretion, but, to the extent the trial

court's ruling turns on an interpretation of those rules, the

review is plenary. *Government of the Virgin Islands v. Petersen*,

131 F. Supp. 2d 707, 709-710 (D.V.I. 2001); *See Government of the

Virgin Islands v. Texido*, 42 V.I. 217, 89 F. Supp. 2d 680, 683

(D.V.I. App. Div. 2000); *Charleswell v. Government of the Virgin

Islands*, 167 F.R.D. 674, 678 (D.V.I. App. Div. 1996); *Rivera v.

Government of the Virgin Islands*, 635 F. Supp. 795, 798 (D.V.I.

App. 1986).

---

[6] An oblique narrative occurs when one party relates to a jury what he
or she did in response to another party's statement, or what someone did in
response to the witness's statement. *See United States v. Reynolds*, 715 F.2d
99, 101 (3d Cir. 1983).

Federal Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). It is well settled that evidence is inadmissible hearsay if its probative value depends on the truth of any assertion of fact it contains or on the credibility of someone not available for contemporaneous cross-examination, and if it does not fall within one of the exceptions to the hearsay rule. *United States v. Reynolds*, 715 F.2d 99, 101 (3d Cir. 1983). However, out-of-court statements are not always hearsay. Thus, the Federal Rules of Evidence explain that "if the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Fed.R.Evid. 801(c) Advisory Committee Note; *Emich Motors Corp. v. General Motors Corp.*, 181 F.2d 70 (7th Cir. 1950).

In this matter, the contested evidence concerns Harvey's testimony that she spoke with her brother, her mother and friends about the incident two days after its occurrence and was taken to the hospital as a result. At trial, Defense Counsel objected to the Government's line of questioning regarding conversations Harvey had with her friends and family members. (J.A. pp. 167-169.) The trial court overruled Defense Counsel's objections concerning Harvey's testimony that she spoke with certain people

*Kwanzaa Martinez v. Government of the Virgin Islands*
D.C. Crim. APP. NO. 2004/0148
Memorandum Opinion
Page 21

about the incident. (J.A. p. 168.) However, the trial court

sustained defense counsel's objections concerning the substance

of those conversations and potential testimony regarding the

effect of those conversations on the listeners.(J.A. pp. 170,

172-174.) Accordingly, the statements admitted at trial were not

hearsay.[7] Therefore, the trial court did not abuse its discretion

by allowing Harvey's testimony into evidence.

## IV. Conclusion

For the reasons cited above, there was sufficient evidence

to convict Appellant of Kidnapping for Rape and the trial court

properly instructed the jury on the statutory elements of

Kidnapping for Rape. Although the prosecutor's questioning

regarding Appellant's post-arrest, post-Miranda silence was

impermissible, it did not rise to the level of reversible error

and the trial court did not err in permitting Harvey's testimony

that she told her brother and mother about the incident.

Accordingly, for the reasons cited above, Appellant's conviction

is hereby **AFFIRMED**.

---

[7] Evidence of Harvey going to the hospital as a result of reporting the incident to her friends and family, is not the type of assertive non-verbal conduct that could be construed as a prohibited hearsay 'statement'. *See* Fed. R. Evid. 801(c)advisory committee's note (defining assertive nonverbal conduct, such as the act of pointing to identify a suspect in a lineup, as the equivalent of words, assertive in nature, and to be regarded as a statement).